UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK T.,[1]

                                              Plaintiff,        Case # 23-CV-00048-FPG

v.                                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                              Defendant.
_____

## INTRODUCTION

On September 5, 2013, Mark T. ("Plaintiff") protectively applied for disability insurance benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 20. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge Bryce Baird (the "ALJ") on February 11, 2016. *Id*. At the hearing, Plaintiff appeared and testified, along with his attorney and a vocational expert. *Id*. On June 16, 2016, the ALJ issued an unfavorable decision. Tr. 28. On August 11, 2017, the Appeals Council denied review. Tr. 1. On February 5, 2019, Plaintiff's case was remanded to the SSA by the Honorable Hugh B. Scott, United States District Court for the Western District of New York. Tr. 571. On July 17, 2019, the Appeals Council vacated the ALJ's prior decision and issued instructions to be followed by the ALJ during his evaluation of Plaintiff's claim on remand, which included that the relevant period to be under adjudication was a period of approximately six-months in 2012. Tr. 456, 575.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 5, 6.

On September 21, 2022, after another hearing before the ALJ, the ALJ issued a second unfavorable decision, which became the final decision of the SSA.  Tr. 473.  Plaintiff appealed directly to this Court on January 19, 2023.  ECF No. 1.  On October 4, 2023, this matter was reassigned to the undersigned.  ECF No. 15.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  ECF Nos. 7, 11.  For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the judgment of the SSA is AFFIRMED.

## LEGAL STANDARD

### I.   District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted).  The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).  "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'"  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quoting *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis added in *Brault*)).

## II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

## I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 14, 2012, the alleged onset date, through his date of last insured of December 31, 2012. Tr. 459. At step two, the ALJ found that Plaintiff has the following severe impairments through the date last insured: "herniated discs in the lumbar spine status-post laminectomy in 2000, spinal stenosis, chronic obstructive pulmonary disease (COPD), Achilles tendonitis, left eye injury with reduced peripheral acuity and depth perception." Tr. 460; *see also* 20 CFR 404.1520(c). At step three, the

ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.  Tr. 461.

Next, the ALJ determined that Plaintiff maintained the RFC to perform "light work" as defined in 20 C.F.R. § 4404.1567(b), with specific exertional limitations, Tr. 463, namely that Plaintiff "can lift 20 pounds occasionally and 10 pounds frequently […] sit up to 6 hours in an 8-hour workday, stand and/or walk for 4 hours in an 8-hour workday […] occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds […] occasionally balance, stoop, kneel, crouch but never crawl […] perform work in environments that require no more than occasional peripheral acuity and depth perception […] must avoid concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gases, and poor ventilation […] can never be exposed to hazards such as unprotected heights or moving machinery […] can perform work limited to simple, routine tasks that can be learned after a short demonstration or within 30 days [and] can have up to occasional interaction with coworkers, supervisors and the public."  Tr. 463-64.

At steps four and five, the ALJ concluded that jobs existed in the national economy that Plaintiff could perform, such as "routing clerk," "merchandise marker," and "package inspector."  Tr. 472.  As such, the ALJ found that Plaintiff was not disabled from the alleged onset date, March 14, 2012, through the date last insured, December 3, 2012.  *Id*.

**II.     Analysis**

Plaintiff argues that the ALJ (i) erred during the RFC determination because he utilized his own lay opinion, rather than the relevant medical opinions, and (ii) failed to provide good reasons for assigning less than persuasive weight to the opinion of Plaintiff's treating source, Dr. Sathia Nathan.  ECF No. 7-1 at 1.  The Commissioner contends that the ALJ (i) properly considered the relevant medical evidence during the RFC determination and crafted an RFC consistent with the

record evidence as a whole, and (ii) properly assessed Dr. Nathan's medical opinion. *See* ECF No. 11-1 at 14-17. For the reasons below, the Court agrees with the Commissioner.

### A. ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ utilized his own lay opinion instead of the relevant medical opinions when crafting Plaintiff's RFC. ECF No. 7-1 at 13-14. Specifically, Plaintiff contends that the ALJ erred by interpreting raw medical evidence after finding all relevant medical opinions which assessed Plaintiff's physical functional capacity to be less than persuasive. The Court disagrees.

A claimant's RFC reflects what she "can still do despite [his] limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). An RFC is based on a "weighing of the treatment records" and a "careful analysis of the opinion evidence." *Jennifer B. v. Comm'r of Soc. Sec.*, No. 19-CV-799-FPG, 2021 WL 485698, at *3 (W.D.N.Y. Feb. 10, 2021). An "ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Moreover, courts routinely recognize that when analyzing the record as a whole, the ALJ need not rely on one particular opinion. *See, e.g., Monroe v. Comm'r of Soc. Sec*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (ALJ properly relied on treatment notes and activities of daily living to formulate the RFC); *Tankisi v. Comm'r Soc. Sec*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (stating that where "the record contains sufficient evidence from which an ALJ can assess … residual functional capacity," a medical source statement or formal medical opinion is not necessarily required). The ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta*, 508 F. App'x at 56.

Moreover, as a general matter, if an ALJ assigns little or no weight to all available medical opinions, "the ALJ create[s] an evidentiary gap in the record requiring remand." *Garrett v. Comm'r of Soc. Sec.*, 17-CV-1009-FPG, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019) (holding that despite ALJ properly assigning all medical opinions little weight, remand required because ALJ may have erred in formulation of plaintiff's RFC). Still, if an ALJ declines to assign significant weight to any available medical opinions, this does not necessarily prohibit an ALJ from making an RFC finding. *Schillo v. Kijakazi*, 21 F.4th 64, 78 (2d. Cir. 2022) (holding an RFC determination valid despite the ALJ not assigning controlling weight to any physician's medical opinion). Indeed, "[t]he failure to assign a specific weight to an opinion may be harmless error, particularly where the ALJ engages in a detailed discussion of the evidence[.]" *Nusreta D. o/b/o D.J. v. Comm'r of Soc. Sec.*, 6:19-CV-06270 EAW, 2021 WL 972504, at *4 (W.D.N.Y. Mar. 16, 2021). As discussed, an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

Here, the ALJ did not assign "significant weight" to the relevant medical opinions, which are summarized below. *Schillo*, 21 F.4th at 78. Nevertheless, the Court concludes that the ALJ did not err in his formulation of the RFC, despite his assignment of less than persuasive weight to the opinions, because the ALJ engaged in a "detailed discussion of the evidence" and properly crafted an RFC that was consistent with the record as a whole. *Matta*, 508 F. App'x at 56.

First, medical expert Dr. Julian Melamed opined that Plaintiff could "perform sedentary exertion given his 'probable' compression of a nerve root that was cited in a 2019 report, and sensory neuropathy (*i.e.* pain), as well as the claimant needing a cane prior to the date last insured." Tr. 469. The ALJ assigned "very little weight" to Dr. Melamed's opinion because it did not relate

to the relevant period under adjudication, nor was it "consistent with or supported by the treatment records" dated from March 2012 through December 2012, which contained "no reference to use of a cane" and did not include "any significant limitations resulting from [Plaintiff's] lumbar spine disorder." Tr. 469. Moreover, the ALJ observed that Dr. Melamed "initially testified at Plaintiff's hearing that he believed that the claimant would require a cane to ambulate, but later conceded that there is no evidence that the claimant was prescribed a cane or used a cane." Tr. 464. In addition, the ALJ found that Plaintiff's treatment records were "minimal and conservative […] with noted improvement" and showed that Plaintiff had a "normal gait." Tr. 469.

Second, Dr. Warren and Amy Albert PA-C opined that Plaintiff would be "limited to a range of sedentary exertion" because he received treatment for chronic back pain and herniated discs since April 2020. Tr. 469. The ALJ assigned "no weight" to these opinions because they were based "upon treatment [Plaintiff received] well almost eight years after the relevant period under adjudication[,]" Tr. 469, and further determined that the opinions, while "generally consistent with each other," were not consistent with their own "correlating treatment records" because those records reflect[ed] minimal clinical findings and grossly normal and conservative treatment." *Id*.

Third, Dr. Sathia Nathan opined that "significant limitations in mental functioning" would preclude Plaintiff from performing "even unskilled work" and Plaintiff's physical conditions would "prevent even daily activities given [his] physical limitations and time off-task more than 30% of the workday and absenteeism four days per month." Tr. 470. The ALJ determined, however, that Dr. Nathan's opinion was "not consistent with or supported by her own correlating treatment records," which reflected prescribed medication that had managed Plaintiff's "stable depression." Tr. 470. Further, Dr. Nathan's opinion showed "normal musculoskeletal findings

7

upon examinations and conservative treatment[,]" which matched Plaintiff's "correlating orthopedics and neurology treatment records, which reflect[ed] grossly normal to minimal clinical findings consistent with a range of light exertion." Tr. 470. In addition, the ALJ noted that Dr. Nathan's opinion was rendered "well after the relevant period under adjudication." Tr. 470. Finally, the ALJ observed that Dr. Nathan's opinion was inconsistent with Plaintiff's testimony at his administrative hearing that he remained able to perform a "wide-range of activities of daily living" which included "yardwork and self-employment work activity." Tr. 470.

Fourth, Dr. John Schwab, consultative orthopedic specialist, opined after a consultative exam in 2019 that Plaintiff was "in no acute distress, had a normal gait, was able to walk on heels and toes, squat to 50%, stand, with requiring no help changing for the exam, mounting/dismounting the exam table and rising from a chair." Tr. 466. Dr. Schwab noted use of a cane may be necessary for arthritis of the right hip, but also noted that "upon exam, the claimant had full mobility of the spine with a negative straight leg raise, stable joints and no neurological deficits, [and] exhibited full strength in his upper and lower bilateral extremities." Tr. 466. Dr. Schwab concluded that Plaintiff had mild restriction in walking, standing, climbing stairs and prolonged use of the right lower extremity with foot controls. *Id*. He further concluded that the claimant could lift and carry push and pull consistent with heavy exertion, and considering the right hip condition, could sit 8 hours, stand 1 hour and walk for 15 minutes at one time for standing totals of 3 hours in an 8-hour workday and walking totals of 2 hours in an 8-hour workday. *Id*. The ALJ assigned "little weight" to this opinion because Dr. Schwab lacked a "longitudinal relationship" with Plaintiff, and further observed that the opinion was not related to the period under adjudication. Tr. 470. Moreover, the ALJ found that Dr. Schwab's opinion that Plaintiff required a cane was inconsistent with both Dr. Schwab's own clinical findings and the

administrative record. *Id*. Because the opinion was not consistent with or supported by the totality of the record, the ALJ accorded it "little weight." *Id*.

Fifth, the ALJ assigned "minimal weight" to the opinions of state agency psychological and medical consultants because they were "somewhat consistent with and supported by" "minimal evidence" pertaining to the relevant period under adjudication, which included treatment records that reflected Plaintiff's back pain (*i.e.* lumbar spine disorder), Achilles tendon issues, and Plaintiff's vision impairment. Tr. 470.

This is not a case in which an ALJ improperly "relied on his own lay opinion" and "crafted an RFC out of whole cloth," as Plaintiff contends. *Nieves v. Comm'r of Soc. Sec.*, 20-CV-179 (JLC), 2022 WL 949797, at *15-16 (S.D.N.Y. Mar. 30, 2022); ECF No. 7-1 at 18. Rather, the record demonstrates that the ALJ engaged in a "detailed discussion" of the relevant medical opinions before permissibly according less than persuasive weight to each relevant opinion on the basis that each was either unsupported by or "inconsistent with the totality of the record[,]" or not relevant to the period under adjudication. *Nusreta D. o/b/o D.J.*, 2021 WL 972504, at *4. Generally, when an ALJ assigns little or no weight to all available medical opinions, "the ALJ create[s] an evidentiary gap in the record requiring remand," but that is not the case here. *Garrett v. Comm'r of Soc. Sec.*, 17-CV-1009-FPG, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019)

Based on the record before the ALJ, the Court finds that the ALJ possessed ample medical evidence from which he could assess Plaintiff's physical limitations and properly determined that Plaintiff could perform a range of "light work" in accordance with the available medical opinions, despite his assignment of less than persuasive weight to the opinions. Tr. 471. Contrary to Plaintiff's claim that the ALJ utilized his own lay opinion to craft Plaintiff's RFC, the ALJ weighed the evidence available to make an RFC finding that was "consistent with the record as a whole[,]"

9

and appropriately considered Plaintiff's treatment records within this context. *Matta*, 508 F. App'x at 56 (internal quotations and citations omitted). In discounting the functional capacities assessed by the relevant medical experts, the ALJ did not err in examining Plaintiff's treatment records because, depending on the circumstances, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment[,]" such as when the medical evidence shows relatively minor physical impairments, like those that are alleged here. *Zayas v. Colvin*, No. 15-CV-6312-FPG, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016). It is well-settled that "where … the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion [as to a claimed impairment] is not necessarily required." *Monroe*, 676 F. App'x at 8. Where an ALJ's Step Four analysis, as here, "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous," remand is not necessary. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *see Ryder v. Comm'r of Soc. Sec.*, No. 18-CV-539-FPG, 2020 WL 5433459, at *5 (W.D.N.Y. Sept. 10, 2020).

### B. Treating Physician

Next, Plaintiff contends that the ALJ failed to provide good reasons for assigning less than persuasive weight to the opinion of treating source Dr. Nathan. ECF No. 7-1 at 1. For the reasons below, the Court is not persuaded.

"[T]he treating physician rule[3] generally requires deference to the medical opinion of a claimant's treating physician." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal and

---

[3] On January 18, 2017, the SSA revised the rules regarding the evaluation of opinion evidence for claims filed after March 27, 2017, and changed the way the Commissioner considers medical opinion evidence and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

other citations omitted).  Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted).  When the ALJ does not afford controlling weight to the medical opinion of a treating physician, he must comprehensively consider several factors, the so-called "*Burgess* factors"—which include supportability, consistency, the source's relationship with the claimant, and the source's specialization, and 'other factors'—and set forth the reasons for the weight assigned to the treating physician's opinion.  *Halloran*, 362 F.3d at 32.[4]  An ALJ commits procedural error by failing to explicitly consider each of these factors, but the error will be considered harmless, and the reviewing court should affirm if "a searching review of the record shows that the ALJ has provided 'good reasons' for [his] weight assessment" and that the "substance of the regulation was not traversed."  *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2021) (summary order); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order).

"At their most basic, the [*Burgess* factors] require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M.*, 2021 WL 706645, at *8 (citing *Jacqueline L. v. Commissioner*, No. 6:19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. January 26, 2021)); *see also Janice P. v. Kijakazi*, No. 5:21-cv-55, 2022 WL 2251666, at *5 (D. Vt. April

---

Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's application was filed before the enactment of the new rules, the Court will apply the rules that were in effect at the time of his application.

[4] Of the five factors the ALJ is to consider in evaluating the persuasiveness of medical opinions, consistency and supportability are "the most important" and formed the foundation of the treating source rule.  *Raymond M. v. Commissioner*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021).

22, 2022); *Cuevas v. Commissioner*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021).

In this case, assuming *arguendo* that the ALJ failed to explicitly apply the appropriate factors, ECF No. 7-1, the Court, after a searching review of the record, concludes that the ALJ provided good reasons for his weight assessment with respect to Dr. Nathan's opinion and that the substance of the relevant regulation was not traversed.  As discussed, Dr. Nathan opined that "significant limitations in mental functioning" precluded Plaintiff from performing "even unskilled work" and Plaintiff's physical conditions would "prevent even daily activities given [his] physical limitations and time off-task more than 30% of the workday and absenteeism four days per month." Tr. 470.  The ALJ determined, however, that Dr. Nathan's opinion was "not *consistent with* or *supported by* her own correlating treatment records," which reflected prescribed medication that managed Plaintiff's "stable depression[,]" Tr. 470 (emphasis added), and pointed to specific evidence within the record that supported such a finding; namely, that Dr. Nathan's own opinion with respect to Plaintiff showed "normal musculoskeletal findings upon examinations and conservative treatment[,]" which matched Plaintiff's "correlating orthopedics and neurology treatment records, which reflect[ed] grossly normal to minimal clinical findings consistent with a range of light exertion." Tr. 470.  In addition, to support his conclusion that Dr. Nathan's opinion was not consistent or supported by the totality of the administrative record, the ALJ observed that Plaintiff testified to performing a "wide-range of activities of daily living" which included "yardwork and self-employment work activity." Tr. 470.

Based on this reasoning, it is clear from his decision that the ALJ provided good reasons for discounting Dr. Nathan's opinion and properly considered the supportability and consistency of the opinion within the context of Plaintiff's treatment records and hearing testimony. Although

the ALJ should have proceeded more methodically through the factors enumerated in § 404.1527(c)(2), it is evident that he "applied the substance of the treating physician rule." *Halloran*, 362 F.3d at 32.  Thus, insofar as the Court can adequately "glean" how the ALJ weighed the consistency and supportability factors for Dr. Nathan's opinion, *Brenda W. v. Comm'r of Soc. Sec.*, No. 20-CV-1056, 2022 WL 446462, at *5 n.5 (W.D.N.Y. Feb. 14,2022), the Court finds the ALJ's procedural error harmless because "the substance of the [regulation] was not traversed." *See Loucks*, 2022 WL 218293, at *2.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 7, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 9, is GRANTED, and the judgment of the SSA is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated:  December 6, 2023
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court
Western District of New York